## Case No. 10,667.

### PAGE v. SHEFFIELD.

[2 Curt. 377;[1] 18 Law Rep. 433.]

Circuit Court, D. Massachusetts. May Term, 1855.[2]

SEAMEN—WAGES—SHIPPING ARTICLES—REAL CONTRACT—MATE.

1. A mariner may allege and prove, that the shipping articles do not truly describe the voyage for which he was shipped, and may recover wages upon the ground that the voyage for which he contracted was different in length from that described in the articles, and that he was wrongfully discharged at the expiration of the voyage specified in the articles; and a mate is within the same rule.

[Cited in The Quintero, Case No. 11,517; Slocum v. Swift, Case No. 12,954; Worth v. The Lioness No. 2, 3 Fed. 925; The Elvine, 19 Fed. 528.]

[See The America, Case No. 286.]

2. Where two distinct contracts, for service on two distinct voyages, are made at the same time, and one only is reduced to writing, the other may be proved by parol.

[See The Alida, Case No. 200.]

[Appeal from the district court of the United States for the district of Massachusetts.

[This was a libel for wages by Henry L. Sheffield against Kilby Page, part owner of the ship Uriel. From a decree of the district court in favor of libellant (Case No. 12,743), respondent appealed.]

F. H. Allen, for appellant.

R. H. Dana, Jr., and Geo. S. Hale, contra.

---

1 [Reported by Hon. B. R. Curtis, Circuit Justice.]

2 [Affirming Case No. 12,743.]

CURTIS, Circuit Justice. This is an appeal from a decree of the district court, pronouncing for wages of the libellant as mate of the ship Uriel, on a voyage from San Francisco to Calcutta, and thence to Boston. The libellant shipped at San Francisco, and there signed articles which described the voyage to be from San Francisco to Calcutta. There is no question that the seamen were shipped for the run, and that the articles correctly describe their voyage. The master, the libellant, who was first officer, and the second and third officers, all signed the same articles. At Calcutta, the master discharged the libellant, against his will, and the district court allowed wages as for the entire voyage to Boston. Two questions have been made on this appeal: 1st. Whether oral evidence of a contract different from that contained in the articles is admissible? 2d. Whether, if such evidence be admitted, it is proved that the libellant shipped to go from Calcutta to Boston, as well as from San Francisco to Calcutta?

Two views may be taken under the first question. The first is, that there were two distinct subjects of agreement: the one being service on a passage from San Francisco to Calcutta; and the other, service from the latter place to Boston; that the master had engaged seamen to perform the first-mentioned voyage only; that the articles were designed to apply only to that passage, as a distinct voyage; and that the contract for the service of the libellant, though made at San Francisco for the other voyage from Calcutta to Boston, was left in parol, to be reduced to writing at Calcutta, when articles should be signed there by the seamen, who might there ship for the voyage home. In this point of view, the articles not being designed to contain the contract for the second voyage, and that being a separate contract, parol evidence of it would be admissible, though it were made at the same time as the other contract for the voyage described in the articles. M'Culloch v. Girard [Case No. 8,737]; Seago v. Deane, 4 Bing. 459; Lapham v. Whipple, 8 Metc. [Mass.] 59. Now, the act of congress of July 20, 1790 (1 Stat. 131), for the government and regulation of merchant seamen, requires the agreement in writing to declare the voyage or voyages for which the mariner shall be shipped; and, if carried out without such a written contract, besides being made liable for the highest rate of wages paid for three months previous, &c., a penalty of twenty dollars for each seaman or mariner is inflicted. Yet, assuming what we must assume, in considering the admissibility of this evidence, that it would prove that the services of the libellant were engaged, not only for the passage to Calcutta, but also for the passage thence to Boston, we have a case where the master must either take the ground that two distinct contracts were made, or else that he broke the law, and

carried the libellant to sea without a contract in writing describing the voyage for which, in point of fact, he was shipped. If the case necessarily rested here, I should be very reluctant to allow the master, or the owner, to assume such a position; and if the parol evidence, when examined, would admit of such an interpretation, as to show two distinct contracts for two voyages, or that, though only one contract was originally made, it was severed by the acts of the parties signing the articles to adapt it to the contract of the seamen to serve from San Francisco to Calcutta, I should certainly lay hold of that interpretation as the one which reconciled the conduct of the master with the requirements of good faith and of positive law.

But there is another ground on which I think the evidence clearly admissible. Assuming, what is still to be assumed, to test the admissibility of the evidence, that there was but one contract, for an entire voyage from San Francisco, by way of Calcutta, to Boston, then the written articles did not describe the voyage on which the libellant went to sea, and the master was prohibited by law, under a penalty, from taking him to sea under such articles. Parol evidence is always admissible to impeach a contract, by showing it to be made in violation of law. It is competent for the libellant to show by parol, that these articles do not declare the voyage or voyages for which he was shipped, and that they thus violate the law; and when this has been shown, the written contract is no longer binding as respects the description of the voyage. If it were, the master would be allowed to take advantage of his own wrong; for it is his own wrong that the voyage is falsely described, and he cannot first violate the law by making a false description, and then set it up to estop the libellant from proving the true one. I am aware in White v. Wilson, 2 Bos. & P. 116, Eldon, C. J., expressed an opinion that a perquisite, claimed by the mate in addition to his wages, which was not specified in the articles, could not be recovered; and that similar decisions were made in The Jack Park, 4 C. Rob. Adm. 308; The Isabella, 2 C. Rob. Adm. 241; The Prince Frederick, 2 Hagg. Adm. 394; and by Judge Hopkinson in Veacock v. M'Call [Case No. 16,904]. But the English statute, unlike ours, does not inflict any penalty for a failure to reduce the seaman's contract to writing, and is a kind of statute of frauds merely. It is directory to the seamen, commanding them to sign articles, and does not, like ours, make it the duty of the master to have a contract in writing prepared, declaring the voyage. In The Prince Frederick, Sir C. Robinson declared the statute was intended for the protection of the owner. See, also, The Isabella and The Jack Park [supra]. 7 & 8 Vict. c. 112, which is the present English law on this subject, seems to have been

framed with a view to the protection of seamen, as, I have no doubt, these provisions of our acts of 1790 and 1840 were.

In the case before Judge Hopkinson,—Veacock v. M'Call [supra],—he seems to have followed the English decisions, as the supreme court of New York appear to have done in Bartlett v. Wyman, 14 Johns. 260, and Johnson v. Dalton, 1 Cow. 543, without considering whether the diversity between the English and American statutes should lead to diverse conclusions. It should be observed, however, that in all these cases the question was, whether the articles are conclusive as to the rate of wages, respecting the insertion of which in the articles the act of congress contains no express requirement, as it does as to the description of the voyage. The act of July 20, 1840, art. 10 (5 Stat. 395), provides, that all shipments of seamen, made contrary to the provisions of this and other acts of congress, shall be void; and any seaman so shipped, may leave the service at any time, and demand the highest rate of wages paid to any seaman shipped for the voyage, or the sum agreed to be given him at his shipment. I do not understand the effect of this, either standing alone, or taken in connection with the act of 1790, to be, that the master may discharge a seaman or officer at any time, if he has not signed such articles as the act of 1790 requires. The seaman has the right either to continue the voyage or leave the service. If he does continue, or is ready to continue, and is prevented by the master, he is to be paid either the wages agreed on, or the highest paid to any seaman shipped for the voyage. But it seems to be the necessary consequence of this provision of law, that if the written articles made a shipment contrary to the act of 1790, by misdescribing the voyage, they are void, and, of course, cannot be set up for any purpose by the master or owner. It is true the third article in this act of 1840 declares, that the certified copy of the shipping articles, to be obtained by the owner from the collector before sailing, shall be deemed to contain all the conditions of contract with the crew as to their service, pay, voyage, and all other things; but by whom. and under what circumstances, is this copy so to be deemed? I am of opinion, only for the purposes and upon the occasions described in the same articles; that is, when laid before a consul, in a foreign port, when he may deem the contents necessary to enable him to discharge his duties. In a court of admiralty, the fact that the seaman was deceived as to the contents of the articles. that they contain what is unreasonable, or oppressive, or unlawful, that they were made in violation of an act of congress, and so are not binding, are all open to inquiry, and are not affected by this provision as to what the certified copy of the articles shall be deemed to contain.

Being of opinion, that oral evidence is legally admissible, I have looked into and considered it, and find that it proves the services of the libellant were contracted for, not only on the passage from San Francisco to Calcutta, but also thence to Boston or some port in the United States; that the discharge of the libellant at Calcutta was therefore wrongful, and the decree of the district court is affirmed, with damages at the rate of six per centum per annum and costs.